COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-284-CR

LUIS FERNANDO SALDIVAR APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Luis Fernando Saldivar pled not guilty to possession of a controlled substance with intent to deliver but was convicted by a jury and sentenced to six years’ confinement.  He appeals the denial of his motion to suppress, claiming error based on his right to be free from unreasonable searches and seizures under the U.S. and Texas Constitutions.  We affirm.

BACKGROUND

Around 1:30 a.m. on March 8, 2004, during a routine check of Amon Carter Park, Corporal Frederick Long of the Fort Worth Police Department saw Appellant’s jeep and pulled up behind it.  He called dispatch for backup before approaching the jeep’s lone occupant, Appellant, because when he turned his spotlight onto the jeep, he saw Appellant lunge over to the right and he was not sure what this movement signified.
(footnote: 2)  On his approach, Corporal Long saw two unopened beer bottles, one on the passenger seat and one in the center console cup holder.

When Corporal Long asked his age, Appellant replied that he was nineteen.  Corporal Long then asked Appellant to step out of the vehicle
(footnote: 3) and took Appellant’s driver’s license back to his car; there were no outstanding warrants.  The back-up officer, Officer Fincher, arrived as Corporal Long wrote out citations to Appellant for violating park curfew, having alcohol in the park, and minor in possession of alcohol.  Both officers were in uniform.  Officer Fincher testified that he assumed a position approximately ten feet away from Appellant.

Corporal Long testified that he did not have Appellant sign the citations, that he explained to Appellant that he had eleven days to make an appearance on the citations, and that Appellant said “no” when asked if he had any questions.
(footnote: 4)  He then handed the driver’s license and the citations to Appellant and told him that he was free to leave.  Appellant then turned towards the jeep.

Corporal Long testified that at that point, he remembered that there was still beer in the jeep and said, “oh, by the way, do you have anything other than the obvious alcohol on your center console in your vehicle that I need to know about, any contraband, weapons, or anything?”  Corporal Long said that Appellant stopped in response to his question.  Appellant then turned, leaned back towards the jeep, ducked his head, and sighed.  In a quiet voice, he replied, “yes.”
(footnote: 5)
 Corporal Long testified that at this point, Appellant was still free to leave, that the jeep was not boxed in, and that “[i]f he would have gotten in the car and driven off, he could have driven off, no problem.  I couldn’t do anything about it.  I didn’t have any reason to detain.”  Appellant testified that he did not feel free to leave at this point and that when the officers asked him if there was anything else they should know, they “kind of like made it look like they were going to search anyways.  That’s how I felt.”  He said they did this by asking him whether there was anything else they should know about.  He testified that the officers did not have their weapons drawn and that they did not threaten to get a search warrant.

“What?” asked Corporal Long, in response to Appellant’s statement.
(footnote: 6) Appellant said, “It’s in the glove compartment.”  Corporal Long asked, “What is in the glove compartment?”
(footnote: 7)  Corporal Long testified that Appellant then ducked his head again and sighed.  “Cocaine,” he said.

Corporal Long testified that at this point, Appellant was detained because he had admitted a felony.  Corporal Long asked if he could get the cocaine, and Appellant replied, “Yeah, go ahead.”  Appellant testified that he gave permission for Corporal Long to get the cocaine “because I had already told him what it was and where it was at.”

Corporal Long opened the glove compartment and found a black plastic bag.  He asked Appellant if that was it, and Appellant said, “Yeah, that’s it.” The bag contained approximately eighty grams of cocaine.

Appellant’s motion to suppress was denied.  The trial court provided a limiting instruction to the jury to the effect that if they found that the officers detained Appellant for longer than necessary to effectuate the stop’s purpose, then they were to disregard any evidence obtained from such further detention and find Appellant not guilty; and if they found any evidence was seized in violation of federal or state law, they were not to consider it for any purpose. The jury convicted Appellant of possession of a controlled substance with intent to deliver.

MOTION TO SUPPRESS

In his single point of error, Appellant claims that the physical evidence from his jeep should have been suppressed because it was obtained as a result of his continued detention, without reasonable suspicion, beyond the time when Corporal Long effectuated the purpose of his initial contact with Appellant, in violation of his Fourth Amendment rights under the U.S. Constitution.
(footnote: 8)  The State counters that the initial investigative detention ended and was followed by an inquiry that Appellant could have ignored or refused to answer.

Standard Of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000);
 State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When, as here, there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.  We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.

In determining whether a trial court’s decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later.  
See Rachal v. State
, 917 S.W.2d 799, 809 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 1043 (1996).  Here, the suppression issue was addressed separately during the trial, after related testimony had already been offered.  Before trial, Appellant requested a running objection to all of that testimony subject to the court’s future order on his motion to suppress.
(footnote: 9)  Therefore, we consider the evidence adduced before and during the suppression hearing as relevant to the trial court’s decision to deny the motion.

Fourth Amendment To The United States Constitution

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. 
Const
. amend. IV.  Whether a search or seizure is reasonable is a question of law that we review de novo.  
Kothe v. State
, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is measured by examining the totality of the circumstances.  
Id
. at 63.  It requires a balancing of the public interest and the individual’s right to be free from arbitrary detentions and intrusions.  
Id
.

The Texas Court of Criminal Appeals has recognized three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests.  
State v. Perez
, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).  Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual interaction, which the citizen is free to terminate at any time.  
See Gurrola v. State
, 877 S.W.2d 300, 302-03 (Tex. Crim. App. 1994); 
State v. Bryant
, 161 S.W.3d 758, 761(Tex. App.—Fort Worth, no pet.).  The dispositive question is whether the totality of the circumstances shows that the police conduct at issue would have caused a reasonable person
(footnote: 10) to believe that he was free to decline the officer’s requests or otherwise terminate the encounter.  
Florida v. Bostick
, 501 U.S. 429, 439-40, 111 S. Ct. 2382, 2389 (1991); 
Velasquez
, 994 S.W.2d at 679; 
Johnson v. State
, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995).  If so, the interaction is a police-citizen “encounter.”  
United States v. Drayton
, 536 U.S. 194, 201, 122 S. Ct. 2105, 2110 (2002); 
Bostick
, 501 U.S. at 434-36, 111 S. Ct. at 2386; 
Florida v. Royer
, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1324 (1983); 
Velasquez
, 994 S.W.2d at 679; 
Hunter v. State
, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997).

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts.  
Terry v. Ohio
, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968); 
Carmouche
, 10 S.W.3d at 328.  
Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity.  
Ford v. State
, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). 

Appellant does not challenge the reasonableness of Corporal Long’s initial investigative detention.  Instead, he contends that Corporal Long and Officer Fincher were required to issue his citations and to release him as soon as they finished, and that his Fourth Amendment rights were violated because they unduly prolonged the investigation, without reasonable suspicion, by asking whether he had anything other than alcohol in his vehicle. 

A detention may last no longer than is necessary to effectuate the purpose of the stop.  
Royer
, 460 U.S. at 500, 103 S. Ct. at 1325; 
Davis v. State
, 947 S.W.2d 240, 243, 245 (Tex. Crim. App. 1997).  Once the purpose has been satisfied, the stop may not be used for an unrelated “fishing expedition.”  
Davis
, 947 S.W.2d at 243 (quoting 
Ohio v. Robinette
, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring))
.  Once an officer concludes the investigation of the conduct that initiated the stop, a continued 
detention
 is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. 
 See Davis
, 947 S.W.2d at 245; 
McQuarters v. State
, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref’d).

But it is not per se unreasonable to ask questions or request consent to search after a detention is completed, as long as a message is not conveyed by the officer’s words or acts that compliance is required.  
See Bostick
, 501 U.S. at 434, 111 S. Ct. at 2386; 
see also Hunter
, 955 S.W.2d at 104;
 
James v. State
, 102 S.W.3d 162, 173 (Tex. App.—Fort Worth 2003, pet. ref’d)
.  The officer may not further detain the occupant or the vehicle if consent is refused, unless reasonable suspicion of some criminal activity exists.  
James
, 102 S.W.3d at 173; 
see also Magana v. State
, 177 S.W.3d 670, 673 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that because an officer may request consent after a stop, he logically may request consent during a stop, as long as the stop is not prolonged beyond its normal duration if consent is refused).

The Fourth Amendment does not require that a lawfully seized defendant must be advised that he is “free to go” before his consent to a search will be recognized as voluntary.  
Robinette
, 519 U.S. at 35, 117 S. Ct. at 419.  But holding onto a person’s license or citations while asking questions, 
State v. Daly
, 35 S.W.3d 237, 243 (Tex. App.—Austin 2000, no pet.), or detaining his vehicle, 
Davis
, 947 S.W.2d at 241, 246, may indicate to a reasonable person that he is not free to depart.

We conclude that the initial investigative detention ended when Corporal Long handed Appellant his license and citations and told him he was free to go because there are no facts to indicate that this initial detention was prolonged.  
Cf. Davis
, 947 S.W.2d at 246; 
Daly
, 35 S.W.3d at 243.  We examine, therefore, whether the question asked by Corporal Long constituted a new investigative detention, or merely an encounter.  Here, the issue is not whether 
Appellant
 felt he had to answer the question before he could leave, but whether Corporal Long, by word or deed, conveyed the message in a manner such that a 
reasonable person 
would conclude compliance was required.  
See Bostick
, 501 U.S. at 439, 111 S. Ct. at 2389; 
Hunter
, 955 S.W.2d at 104, 106. 

In 
Hunter
, the court deemed several facts noteworthy in concluding that two officers investigating drug smuggling at a bus station did not convey such a message when they asked for Hunter’s identification and for permission to search his bag.  966 S.W.2d at 103-04, 106.  The officers were dressed in plain clothes, their weapons were concealed, and only one officer engaged the suspect while the other stood several feet back.
  Id
. at 104.  The engaging officer did not retain the suspect’s bus ticket and did not affirmatively state that he believed the suspect was carrying drugs.  
Id
.  He specifically told the suspect that he did not have to allow him to look in his bag and did not suggest that he would get a search warrant if the suspect did not permit him to look in the bag.  
Id
.  The suspect agreed to the search of his bag.  
Id
. at 103.

Appellant cites 
McQuarters
, 
Davis
, and 
Daly
 in support of his argument that the initial detention continued, unreasonably, when Corporal Long asked his question.  But 
Davis
 and 
McQuarters
 are inapposite here because prolonged detentions occurred only after the individuals refused to give consent to a search, under circumstances in which the officers had no reasonable suspicion

to detain.
(footnote: 11)  
Davis
, 947 S.W.2d at 241; 
McQuarters
, 58 S.W.3d at 254.  In 
McQuarters
, when asked if he had anything illegal in his vehicle, the driver said “no.”  58 S.W.3d at 254.
(footnote: 12)  In 
Davis
, the driver was not asked whether he had anything illegal in his car but the officers called for a canine unit when he denied permission to search.
(footnote: 13)  947 S.W.2d at 241.  Here, Appellant was not asked to consent to a search until after he had admitted to the presence of cocaine in his jeep’s glove compartment.  Having concluded that Appellant’s initial detention ended with the return of his license, we must determine whether his answer to Corporal Long’s question was voluntary before examining his consent to the search.

In 
Daly
, the court indicated that a reasonable person would not feel free to leave when the officer started asking questions as he returned the driver’s license.  35 S.W.3d at 241, 243.  Daly was stopped for failing to signal before turning while out for an afternoon drive with his wife and one year old daughter.  
Id
. at 239.  He was stopped by an officer dressed completely in black, in combat-style boots and a “SWAT-style” uniform, with his pistol strapped to his thigh.  
Id
. at 239, 242.  His vehicle was marked “Narcotics Enforcement Team.”  
Id
. at 243.

Here, 
the officers were in uniform, not plain clothes, 
cf. Hunter
, 955 S.W.2d at 104, or “SWAT-style” gear, 
cf. Daly
, 35 S.W.3d at 242.  Their weapons were not concealed, but they were holstered at their sides.  Police uniforms and obvious sidearms, by themselves, are not necessarily intimidating.
(footnote: 14)  
See Drayton
, 536 U.S. at 204-05, 122 S. Ct. at 2112; 
cf. Daly
, 35 S.W.3d at 242.  Like the other officer in 
Hunter
, Officer Fincher testified that he stood approximately ten feet away while Corporal Long engaged Appellant.  
See
 955 S.W.2d at 104.  Corporal Long did not retain Appellant’s license or the citations nor threaten to detain Appellant’s jeep. 
 Cf. Davis
, 947 S.W.2d at 241; 
Daly
, 35 S.W.2d at 242.  Nor did Corporal Long affirmatively state to Appellant that he thought he was carrying drugs or other contraband before asking the question.  
See Hunter, 
966 S.W.2d at 104.
.

While Corporal Long did not tell Appellant he did not have to answer the question, he also did not threaten to get a search warrant if Appellant did not answer it.  He told Appellant that he was free to leave and then asked him a question.
(footnote: 15)  
Cf. Daly
, 35 S.W.3d at 243 (stating that officer’s admission in court that he intended to question Daly in order to develop reasonable suspicion of a narcotics violation was an indication that Daly was not free to leave).

These facts are most similar to 
Hunter
, because although Appellant might have felt uncomfortable, there are no facts that indicate the officers acted to detain him unreasonably by asking the question or that he was not objectively

free to depart.  
See generally Hunter
, 955 S.W.2d at 104-06.  After Appellant said that he had cocaine in the glove compartment, he was once more detained.
(footnote: 16)
 We next examine whether his consent to search was voluntary.  
A search conducted with the consent of the suspect is an exception to the warrant requirement, so long as the consent is voluntary.  
Schneckloth v. Bustamonte
, 412 U.S. 218, 219, 248-49, 93 S. Ct. 2041, 2043-44, 2059 (1973).  To show that the search was made with consent, the State must prove by clear and convincing evidence, based on the totality of the circumstances, that the defendant gave consent freely and voluntarily.  
Reasor v. State
, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); 
State v. Hunter
, 102 S.W.3d 306, 310 (Tex. App.—Fort Worth 2003, no pet.).  Voluntariness is to be determined from all the circumstances surrounding the consent.  
Schneckloth
, 412 U.S. at 248-49, 93 S. Ct. at 2059.  To be voluntary, consent must “not be coerced, by explicit or implicit means, by implied threat or covert force.”  
Carmouche
, 10 S.W.3d at 331 (quoting 
Schneckloth
, 412 U.S. at 228, 93 S.Ct. at 2048).  A police officer’s failure to inform the accused that he can refuse consent is a factor to consider in determining the voluntariness of consent; however, the absence of such information does not automatically render the accused’s consent involuntary.  
Johnson
, 68 S.W.3d at 653; 
Hunter
, 102 S.W.3d at 311.

Appellant assented when Corporal Long asked if he could retrieve the cocaine from the glove compartment.  He admitted in his testimony that he gave consent to the search because he had already informed Corporal Long that there was cocaine in the car and that it was in the glove compartment.  There was no testimony in the record about any actions by Corporal Long or Officer Fincher that would indicate that Appellant was coerced by the officers to grant permission to retrieve the cocaine after Appellant told them it was in the jeep or that his consent was in any other way involuntary.  Based on these facts, we hold that Appellant voluntarily consented to the search of his jeep, and therefore, the subsequently discovered evidence was not inadmissible as “fruit of the poisonous tree.”  
See Segura v. United States
, 468 U.S. 796, 804-05, 104 S. Ct. 3380, 3385 (1984).

CONCLUSION

Because we hold that Appellant was no longer detained when Corporal Long asked him if he had any contraband in his jeep, Appellant’s response to the question was voluntary, as was his consent to retrieve the cocaine.  Therefore, we overrule Appellant’s single point of error and affirm.

DIXON W. HOLMAN

JUSTICE

PANEL B:  DAUPHINOT, HOLMAN, and GARDNER, JJ.

PUBLISH

DELIVERED:
  November 16, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
Corporal Long testified, “When you see somebody move like that, you don’t know if they are going after a weapon or if they’re trying to hide something or if they’re just making a simple movement trying to get a wallet, trying to get an insurance card, or what have you.”

3:
Corporal Long testified that he asked Appellant to step out of the vehicle because “[t]hat way if there is a weapon, he can’t go after it, he’s out there talking to me.  It’s safer if it’s one on one.”

4:
Corporal Long said that the only citations that require signature are juvenile citations and that he prefers not to hand his pen to people receiving citations mainly because the pen could be used as a weapon against him.

Appellant testified at the suppression hearing that Corporal Long had him sign the citations and that Corporal Long and Officer Fincher both got within a few feet of Appellant and were right by each other.  Photocopies of the citations were admitted into evidence without objection.  Appellant’s signature was absent from all three.  He also testified that Corporal Long still had the citations and the driver’s license when the officers “saw the beer again and they said, ‘do you have anything else in the car.’”  He testified that Officer Fincher asked the question, not Corporal Long.

5:
Officer Fincher testified that he stopped, “almost in shock,” when Appellant said this.  Corporal Long said that Officer Fincher was walking toward his car and when Appellant said “yes,” Officer Fincher did a double-take and “looked like, ‘what?’ . . . He was just as shocked as I was that [Appellant] said yes.”

6:
Corporal Long said that he did not know to which option Appellant answered “yes” and “was frankly surprised he said yes anyways, period, and that’s why I asked the question, ‘what?’”  He testified that this was a clarifying question about what was in the jeep.

7:
Officer Fincher testified that he and Corporal Long started to get on edge because they did not know at that point what was in the glove compartment. 

8:
Appellant also claims that the continued detention violated 
article I, section 9 of the Texas Constitution
.  We will only address whether Appellant’s rights were violated under the U.S. Constitution because Appellant does not distinguish those rights from his rights under the Texas Constitution.  
See Dewberry v. State
, 4 S.W.3d 735, 744 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000) (addressing only U.S. Constitution because appellant failed to distinguish rights with Texas Constitution); 
Hale v. State
, 139 S.W.3d 418, 421 (Tex. App.—Fort Worth 2004, no pet.) (determining appellant failed to distinguish between U.S. Constitution and Texas Constitution).

9:
The State indicated that it would probably not go forward with the trial if the court granted Appellant’s motion to suppress.

10:
“[M]ost confrontations with the police are uncomfortable—given the implicit difficulty in refusing any request from a peace officer who stands cloaked in the authority of law enforcement.”  
Carmouche
,
 
10 S.W.3d at 333. “But the Constitution does not guarantee freedom from discomfort.  And the test is not whether a timid person would feel free to terminate the interview. Instead, the [courts use] a ‘reasonable person’ standard.”  
State v. Velasquez
, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).  The Constitution “presumes that an actor is invested with a vibrant sense of his own constitutional rights and will assert those rights when they are implicated.” 
 Carmouche
, 10 S.W.3d at 333.

11:
Both cases involved drivers pulled over at night for suspected DWI. 
Davis
, 947 S.W.2d at 241; 
McQuarters
, 58 S.W.3d at 253-54.

12:
We held that the 
McQuarters
 detention was unreasonable because the officer concluded the purpose of the initial stop when he dismissed his suspicion that the driver was intoxicated and issued traffic violation warnings; to permit further detention for a canine search, the officer needed, but lacked, reasonable suspicion that the driver was hiding narcotics.  58 S.W.3d at 257-58.

13:
Davis refused consent to a search and the officers told him that he was free to leave, but that his vehicle would be detained.  947 S.W.2d at 241.  The court concluded that the stop’s purpose was effectuated when the officers determined that Davis was not drunk; continued detention was unreasonable when it had no justification, it was 1:00 a.m., Davis’ only visible means of transportation was the detained vehicle, and there was nothing to indicate that the vehicle was in any way related to criminal conduct.  
Id
. at 245-46.

14:
“Officers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort.  Much the same can be said for wearing sidearms.  That most law enforcement officers are armed is a fact well known to the public.  The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon.”  
Drayton
, 536 U.S. at 204-05, 122 S. Ct. at 2112.

15:
These facts parallel 
Robinette
.  519 U.S. at 35-36, 117 S. Ct. at 419-20.  Robinette was stopped for speeding, and a computer check of his license was made.  
Id
. at 35, 419.  After returning the license, the officer issued a verbal warning, then said, “One question before you get gone:  [A]re you carrying any illegal contraband in your car?  Any weapons of any kind, drugs, anything like that?”  
Id
. at 35-36, 419.  Unlike Appellant, Robinette said “no,” but like Appellant, he consented when the deputy asked if he could search the car, in which the deputy found illegal narcotics.  
Id
. at 36, 419.  The court held his consent to search was voluntary.  
Id
. at 39-40, 421. 
 See also Spight v. State
, 76 S.W.3d 761, 767-68 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that it was not unreasonable per se for officer to request consent to search after traffic stop was completed). 

16:
The Texas Code of Criminal Procedure states that an officer may arrest an offender without a warrant “when the offense is committed in his presence or within his view, if the offense is one classed as a felony,” or “for any offense committed in his presence or within his view.”  
Tex. Code Crim. Proc. Ann. 
art. 14.01(a), (b) (Vernon 2005).