COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-267-CR

THE STATE OF TEXAS APPELLANT

V.

JOHN PERRY MURPHY APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

The State appeals the trial court’s order granting appellee John Perry Murphy’s motion to suppress evidence.
(footnote: 2)  In four points, the State complains that the trial court erred by granting appellee’s motion.  We reverse and remand.

At approximately 2:19 p.m. on April 9, 2005, Officer Brad Mitchell was on bicycle patrol in Bear Creek Park in Grapevine when he observed a white male, whom he later identified as appellee, riding a motorcycle across a creek approximately ten or fifteen yards away.  Because Officer Mitchell believed the motorcyclist was violating a city ordinance prohibiting the operation of a motorized vehicle within a city park, he began pursuing the motorcyclist.  During the pursuit, Officer Mitchell lost sight of the motorcyclist for several minutes.  In the meantime, he spoke with a park visitor who reported he had seen a person on a motorcycle drive down an embankment on the creek and possibly “wreck[] out.”  Officer Mitchell then observed appellee 
attempting to push his motorcycle up the embankment.

Officer Mitchell approached appellee, asked him “what had happened,” and “informed him that it was unlawful for him to operate the motorcycle within the park.”  Appellee admitted to Officer Mitchell that “the motorcycle belonged to him, and that he was the one [who] was riding it.”  Officer Mitchell then helped appellee push the motorcycle up the embankment incline.  While helping appellee, Officer Mitchell became suspicious that he was intoxicated.  Officer Mitchell noticed appellee had bloodshot, watery eyes; that he was disoriented; that he slurred his speech; and that he had the smell of alcohol on his breath.  Appellee also told Officer Mitchell he was feeling dizzy.  Apparently concerned that appellee may have been injured, Officer Mitchell called medics.  Appellee, however, refused medical treatment.  Officer Mitchell then administered field sobriety tests and arrested appellee for driving while intoxicated.
(footnote: 3) 

Appellee moved to suppress evidence, arguing that Officer Mitchell did not have reasonable suspicion or probable cause to stop him.  Following an evidentiary hearing, the trial court granted appellee’s motion to suppress.  This appeal by the State followed.

In its first two points, the State complains that the trial court abused its discretion in granting appellee’s motion to suppress because the trial court did not consider whether the police-citizen contact was lawful, but instead based its ruling on a determination that the evidence was insufficient to support a DWI conviction.  In response, appellee contends that the trial court’s comments regarding the lack of evidence to support a DWI conviction merely show that the trial court disbelieved Officer Mitchell’s testimony, and that we must give the trial court’s ruling almost total deference because it is based on Officer Mitchell’s credibility.  

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 4)  
In reviewing the trial court’s decision, we do not engage in our own factual review.
(footnote: 5)  
The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 6)  
Therefore, we give almost total deference to the trial court’s rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 7) 
 When the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, however, we review de novo a trial court’s rulings on mixed questions of law and fact.
(footnote: 8) 
 
Here, the trial court did not make express fact findings, but it did state the reasons for its ruling on the record.
(footnote: 9)  At the conclusion of the hearing, the trial court stated that “there [was] confusion” as to whether or not appellee was the person whom Officer Mitchell had seen driving the motorcycle.  The court then stated,

I think this is probably about as weak a case as I have heard in a long time that I wouldn’t grant the motion to suppress on.  You carry the officer’s testimony about coming upon this bike, that as you say, is not hot, or he can’t testify that it was hot, can’t testify as to any damage on it, but that the defendant was with it and said it was his bike.  And then he finds that he apparently is intoxicated.  I don’t think you have got a DWI.  I think you might have a public intox, so I’m going to grant the motion to suppress on DWI. 

We defer to the trial court’s conclusion, based on its apparent disbelief of at least part of Officer Mitchell’s testimony, that the officer did not have reasonable suspicion to stop appellee.  We conclude, however, that Officer Mitchell was justified in approaching appellee because the police-citizen interaction was initially a consensual encounter.
(footnote: 10) 

The Texas Court of Criminal Appeals has recognized three categories of interactions between police officers and citizens: encounters, investigative detentions, and arrests.
(footnote: 11)  Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual interaction which the citizen is free to terminate at any time.
(footnote: 12)  The dispositive question is whether the totality of the circumstances shows that the police conduct at issue would have caused a reasonable person to believe that he was free to decline the officer’s requests or otherwise terminate the encounter.
(footnote: 13)  If a reasonable person would feel free to terminate the encounter, the police-citizen contact is merely a consensual encounter and does not implicate the Fourth Amendment.
(footnote: 14)  A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen, and
 we have held that a reasonable person would feel free to disregard police questioning even though police officers’ approach may be uncomfortable or intimidating.
(footnote: 15)  

Circumstances that may indicate that a police-citizen interaction is a seizure, rather than a consensual encounter, include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or use of language or tone of voice indicating that compliance with the officer’s requests might be compelled.
(footnote: 16)  Additionally, an officer’s use of flashing lights or actions to block a suspect’s vehicle may indicate the interaction was a seizure.
(footnote: 17)  Absent some such evidence, however, otherwise inoffensive conduct between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person.
(footnote: 18) 

The totality of the circumstances in this case shows that Officer Mitchell’s initial contact with appellee was a consensual police-citizen encounter.  The evidence shows that, initially, Officer Mitchell merely engaged appellee in a conversation, informed him of a law of which he may not have been aware, helped him push the motorcycle up the hill, and appellee accepted the officer’s assistance.  The fact that Officer Mitchell suspected that appellee had violated a law, and informed appellee of that law, does not necessarily prevent the interaction from being an encounter.
(footnote: 19) 
 Rather, the question is upon viewing the totality of the circumstances whether a reasonable person would feel free to terminate the encounter.  There is no evidence that during this encounter Officer Mitchell displayed his weapon, physically touched appellee, used harsh language or tone, activated flashing lights, prevented appellee from leaving the scene, or that
 appellee believed he could not leave.
 
 We hold that during the initial interaction a reasonable person would feel free to terminate the encounter, and therefore Officer Mitchell’s initial contact with appellee was a consensual encounter. 

When the conversation led Officer Mitchell to suspect appellee had been driving while intoxicated, however, the encounter escalated into an investigative detention.
(footnote: 20)  An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law.
(footnote: 21)  
Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts would lead him reasonably to conclude that a particular person is, has been, or soon will be engaged in criminal activity.
(footnote: 22) 

After speaking with appellee, Officer Mitchell noticed he had bloodshot, watery eyes, was disoriented, slurred his speech, and had the smell of alcohol on his breath.  Further, appellee admitted he had been riding the motorcycle and told Officer Mitchell that he was dizzy.  Based on the totality of circumstances, Officer Mitchell had ample specific, articulable facts that led him reasonably to conclude appellee had been engaged in criminal activity.
(footnote: 23)  Therefore, Officer Mitchell was justified in temporarily detaining appellee to perform field sobriety tests.  

To sum up, we hold that the evidence conclusively establishes that  Officer Mitchell’s initial approach and questioning of appellee was consensual, but that this consensual encounter escalated into an investigative detention that was supported by reasonable suspicion that appellee was intoxicated.
(footnote: 24)  For these reasons, we hold that the trial court improperly granted appellee’s motion to suppress evidence.
(footnote: 25)  Accordingly, we reverse the trial court’s order and remand the case for further proceedings consistent with this opinion.

PER CURIAM

PANEL A:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED: August 23, 2007 
                                                                                                                        

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
The Honorable Robert E. Thornton, visiting judge, presided over the hearing and granted the motion to suppress. 

3:
Appellee’s motion to suppress was limited to the propriety of the stop; he did not challenge his arrest. 

4:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  

5:
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  

6:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  

7:
Montanez v. State
, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d). 

8:
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652–53.

9:
See State v. Cullen
, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006); 
Ross
, 32 S.W.3d at 858.

10:
At the hearing on the motion to suppress, the State argued both that Officer Mitchell had reasonable suspicion to stop appellee and that Officer Mitchell could lawfully approach appellee to investigate the apparent accident.  Since the consensual encounter theory was presented to the trial court and preserved for our review, we may reverse the judgment on this theory.  
See State v. Bailey
, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006).

11:
State v. Perez
, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

12:
See
 
Gurrola v. State
, 877 S.W.2d 300, 302–03 (Tex. Crim. App. 1994).

13:
Florida v. Bostick
, 501 U.S. 429, 439–40, 111 S. Ct. 2382, 2389 (1991); 
State v. Velasquez
, 994 S.W.2d 676, 679 (Tex. Crim. App. 1999).

14:
See
 
United States v. Drayton
, 536 U.S. 194, 201, 122 S. Ct. 2104, 2110 (2002); 
Florida v. Royer
, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 1324 (1983); 
Velasquez
, 994 S.W.2d at 679. 

15:
Velasquez
, 994 S.W.2d at 678; 
Saldivar v. State
, 209 S.W.3d 275, 281 n.10 (Tex. App.—Fort Worth 2006, no pet.) (mem. op.); 
Williams v. State
, No. 02-99-00570-CR, slip op. at 13 (Tex. App.—Fort Worth Aug. 30, 2000, no pet.) (not designated for publication).

16:
United States v. Mendenhall
, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980); 
Pando v. State
, No. 02-98-00484-CR, slip op. at 5 (Tex. App.—Fort Worth Mar. 11, 1999, pet. ref’d) (not designated for publication).

17:
See State v. Carter
, No. 02-04-00063-CR, 2005 WL 2699219, at *2 (Tex. App.—Fort Worth Oct. 20, 2005, pet. ref’d) (mem. op., not designated for publication);
 Juarez v. State
, Nos. 14-05-00196-CR, 14-05-00197-CR, 14-05-00198-CR, 2006 WL 300409, at *2 (Tex. App.—Houston [14th Dist.] Feb. 9, 2006, no pet.) (not designated for publication).

18:
Mendenhall
, 446 U.S. at 555, 100 S. Ct. at 1877. 

19:
See Hunter v. State
, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (holding a reasonable, innocent person would feel free to leave when two plain clothes officers approached and questioned suspect about travel plans and whether he was carrying drugs, told suspect they were conducting a “narcotics interview,” and requested to search suspect’s bag);
  State v. Salinas
, No. 12-02-00275-CR, 2004 WL 306128, at *3 (Tex. App.—Tyler Feb. 18, 2004, no pet.) (mem. op., not designated for publication) (noting that an officer’s questions about suspects’ involvement in destruction of property would not communicate to the individuals that they were not free to leave);
 
Pando
, No. 02-98-00484-CR, slip op. at 5 (holding police officers’ conversation with suspect, informing him they were going to execute a search warrant at his house and inquiring whether he wanted to be present, was consensual encounter).

20:
See Saldivar
, 209 S.W.3d at 284.

21:
Ford
 
v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005
).

22:
Id.
 at
 492–93.
 

23:
Id.
  The visiting judge also apparently believed that Officer Mitchell had reasonable suspicion to believe that appellee was intoxicated when he stated on the record that the State “might have a public intox.”  

24:
Even assuming that the trial court was correct in concluding that public intoxication was the only offense for which appellee could be arrested under the evidence admitted at the suppression hearing, the lawfulness of the arrest is not defeated by the officer’s calling the offense a DWI.  
See
 
Jones v. State
, 949 S.W.2d 509, 515–16 (Tex. App.—Fort Worth 1997, no pet.).

25:
In light of our disposition of the State’s first two points, we need not address the State’s remaining points.  
See 
Tex. R. App. P.
 47.1.