COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-267-CR

 

 

THE STATE OF TEXAS                                                         APPELLANT

 

                                                   V.

 

JOHN PERRY MURPHY                                                            APPELLEE

 

                                              ------------

 

        FROM
COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

The State appeals the trial
court=s order granting appellee John Perry Murphy=s motion to suppress evidence.[2]  In four points, the State complains that the
trial court erred by granting appellee=s motion.  We reverse and
remand.








At approximately 2:19 p.m. on
April 9, 2005, Officer Brad Mitchell was on bicycle patrol in Bear Creek Park
in Grapevine when he observed a white male, whom he later identified as
appellee, riding a motorcycle across a creek approximately ten or fifteen yards
away.  Because Officer Mitchell believed
the motorcyclist was violating a city ordinance prohibiting the operation of a
motorized vehicle within a city park, he began pursuing the motorcyclist.  During the pursuit, Officer Mitchell lost
sight of the motorcyclist for several minutes. 
In the meantime, he spoke with a park visitor who reported he had seen a
person on a motorcycle drive down an embankment on the creek and possibly Awreck[] out.@  Officer Mitchell then observed appellee
attempting to push his motorcycle up the embankment.








Officer Mitchell approached
appellee, asked him Awhat had
happened,@ and Ainformed him that it was unlawful for him to operate the motorcycle
within the park.@  Appellee admitted to Officer Mitchell that Athe motorcycle belonged to him, and that he was the one [who] was
riding it.@  Officer Mitchell then helped appellee push
the motorcycle up the embankment incline. 
While helping appellee, Officer Mitchell became suspicious that he was
intoxicated.  Officer Mitchell noticed
appellee had bloodshot, watery eyes; that he was disoriented; that he slurred
his speech; and that he had the smell of alcohol on his breath.  Appellee also told Officer Mitchell he was
feeling dizzy.  Apparently concerned that
appellee may have been injured, Officer Mitchell called medics.  Appellee, however, refused medical
treatment.  Officer Mitchell then
administered field sobriety tests and arrested appellee for driving while intoxicated.[3]


Appellee moved to suppress
evidence, arguing that Officer Mitchell did not have reasonable suspicion or
probable cause to stop him.  Following an
evidentiary hearing, the trial court granted appellee=s motion to suppress.  This
appeal by the State followed.

In its first two points, the
State complains that the trial court abused its discretion in granting appellee=s motion to suppress because the trial court did not consider whether
the police-citizen contact was lawful, but instead based its ruling on a
determination that the evidence was insufficient to support a DWI
conviction.  In response, appellee
contends that the trial court=s comments regarding the lack of evidence to support a DWI conviction
merely show that the trial court disbelieved Officer Mitchell=s testimony, and that we must give the trial court=s ruling almost total deference because it is based on Officer
Mitchell=s credibility.  













We review a
trial court=s ruling on
a motion to suppress evidence under a bifurcated standard of review.[4]  In reviewing the trial court=s decision, we do not engage in our own factual review.[5]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[6]  Therefore, we give almost total deference to
the trial court=s rulings on
questions of historical fact and application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.[7]  When the trial court=s rulings do not turn on the credibility and demeanor of the
witnesses, however, we review de novo a trial court=s rulings on mixed questions of law and fact.[8]    Here,
the trial court did not make express fact findings, but it did state the
reasons for its ruling on the record.[9]  At the conclusion of the hearing, the trial
court stated that Athere [was]
confusion@ as to
whether or not appellee was the person whom Officer Mitchell had seen driving
the motorcycle.  The court then stated,

I
think this is probably about as weak a case as I have heard in a long time that
I wouldn=t
grant the motion to suppress on.  You
carry the officer=s
testimony about coming upon this bike, that as you say, is not hot, or he can=t
testify that it was hot, can=t testify as to any damage on
it, but that the defendant was with it and said it was his bike.  And then he finds that he apparently is
intoxicated.  I don=t
think you have got a DWI.  I think you
might have a public intox, so I=m going to grant the motion
to suppress on DWI. 

 

We defer to the trial court=s conclusion, based on its apparent disbelief of at least part of
Officer Mitchell=s testimony,
that the officer did not have reasonable suspicion to stop appellee.  We conclude, however, that Officer Mitchell
was justified in approaching appellee because the police-citizen interaction
was initially a consensual encounter.[10]














The Texas Court of Criminal
Appeals has recognized three categories of interactions between police officers
and citizens: encounters, investigative detentions, and arrests.[11]  Unlike investigative detentions and arrests,
which are seizures for Fourth Amendment purposes, an encounter is a consensual
interaction which the citizen is free to terminate at any time.[12]  The dispositive question is whether the
totality of the circumstances shows that the police conduct at issue would have
caused a reasonable person to believe that he was free to decline the officer=s requests or otherwise terminate the encounter.[13]  If a reasonable person would feel free to
terminate the encounter, the police‑citizen contact is merely a
consensual encounter and does not implicate the Fourth Amendment.[14]  A police officer is just as free as any other
citizen to stop and ask questions of a fellow citizen, and we have held that a
reasonable person would feel free to disregard police questioning even though
police officers= approach
may be uncomfortable or intimidating.[15]  

Circumstances that may
indicate that a police-citizen interaction is a seizure, rather than a
consensual encounter, include the threatening presence of several officers, the
display of a weapon by an officer, some physical touching of the person of the
citizen, or use of language or tone of voice indicating that compliance with
the officer=s requests
might be compelled.[16]  Additionally, an officer=s use of flashing lights or actions to block a suspect=s vehicle may indicate the interaction was a seizure.[17]  Absent some such evidence, however, otherwise
inoffensive conduct between a citizen and a police officer cannot, as a matter
of law, amount to a seizure of that person.[18]














The totality of the
circumstances in this case shows that Officer Mitchell=s initial contact with appellee was a consensual police‑citizen
encounter.  The evidence shows that,
initially, Officer Mitchell merely engaged appellee in a conversation, informed
him of a law of which he may not have been aware, helped him push the
motorcycle up the hill, and appellee accepted the officer=s assistance.  The fact that
Officer Mitchell suspected that appellee had violated a law, and informed
appellee of that law, does not necessarily prevent the interaction from being
an encounter.[19]
 Rather, the question is upon viewing
the totality of the circumstances whether a reasonable person would feel free
to terminate the encounter.  There is no
evidence that during this encounter Officer Mitchell displayed his weapon,
physically touched appellee, used harsh language or tone, activated flashing
lights, prevented appellee from leaving the scene, or that appellee believed he
could not leave.  We hold that
during the initial interaction a reasonable person would feel free to terminate
the encounter, and therefore Officer Mitchell=s initial contact with appellee was a consensual encounter. 

When the conversation led
Officer Mitchell to suspect appellee had been driving while intoxicated,
however, the encounter escalated into an investigative detention.[20]  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.[21]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts would lead him
reasonably to conclude that a particular person is, has been, or soon will be
engaged in criminal activity.[22]









After speaking with appellee,
Officer Mitchell noticed he had bloodshot, watery eyes, was disoriented, slurred
his speech, and had the smell of alcohol on his breath.  Further, appellee admitted he had been riding
the motorcycle and told Officer Mitchell that he was dizzy.  Based on the totality of circumstances,
Officer Mitchell had ample specific, articulable facts that led him reasonably
to conclude appellee had been engaged in criminal activity.[23]  Therefore, Officer Mitchell was justified in
temporarily detaining appellee to perform field sobriety tests.  

To sum up, we hold that the
evidence conclusively establishes that 
Officer Mitchell=s initial
approach and questioning of appellee was consensual, but that this consensual
encounter escalated into an investigative detention that was supported by
reasonable suspicion that appellee was intoxicated.[24]  For these reasons, we hold that the trial
court improperly granted appellee=s motion to suppress evidence.[25]  Accordingly, we reverse the trial court=s order and remand the case for further proceedings consistent with
this opinion.








 

PER CURIAM

PANEL
A:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

DELIVERED: August 23, 2007                                                                                                                                                       











[1]See Tex. R. App. P. 47.4.





[2]The
Honorable Robert E. Thornton, visiting judge, presided over the hearing and
granted the motion to suppress. 





[3]Appellee=s
motion to suppress was limited to the propriety of the stop; he did not
challenge his arrest. 





[4]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  





[5]Romero
v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no
pet.).  





[6]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 






[7]Montanez
v. State, 195 S.W.3d 101, 108B09
(Tex. Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53
(Tex. Crim. App. 2002); State v. Ballman, 157 S.W.3d 65, 68 (Tex. App.CFort
Worth 2004, pet. ref=d). 





[8]Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson,
68 S.W.3d at 652B53.





[9]See
State v. Cullen, 195 S.W.3d 696, 698B99
(Tex. Crim. App. 2006); Ross, 32 S.W.3d at 858.





[10]At
the hearing on the motion to suppress, the State argued both that Officer
Mitchell had reasonable suspicion to stop appellee and that Officer Mitchell
could lawfully approach appellee to investigate the apparent accident.  Since the consensual encounter theory was
presented to the trial court and preserved for our review, we may reverse the
judgment on this theory.  See State v.
Bailey, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006).





[11]State
v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).





[12]See Gurrola
v. State, 877 S.W.2d 300, 302B03 (Tex. Crim. App. 1994).





[13]Florida
v. Bostick, 501 U.S. 429, 439B40,
111 S. Ct. 2382, 2389 (1991); State v. Velasquez, 994 S.W.2d 676, 679
(Tex. Crim. App. 1999).





[14]See United
States v. Drayton, 536 U.S. 194, 201, 122 S. Ct. 2104, 2110 (2002); Florida
v. Royer, 460 U.S. 491, 497B98, 103 S. Ct. 1319, 1324
(1983); Velasquez, 994 S.W.2d at 679. 





[15]Velasquez, 994
S.W.2d at 678; Saldivar v. State, 209 S.W.3d 275, 281 n.10 (Tex. App.CFort
Worth 2006, no pet.) (mem. op.); Williams v. State, No. 02-99-00570-CR,
slip op. at 13 (Tex. App.CFort
Worth Aug. 30, 2000, no pet.) (not designated for publication).





[16]United
States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877
(1980); Pando v. State, No. 02-98-00484-CR, slip op. at 5 (Tex. App.CFort
Worth Mar. 11, 1999, pet. ref=d) (not designated for
publication).





[17]See
State v. Carter, No. 02-04-00063-CR, 2005 WL 2699219, at *2
(Tex. App.CFort
Worth Oct. 20, 2005, pet. ref=d) (mem. op., not designated
for publication); Juarez v. State, Nos. 14-05-00196-CR, 14-05-00197-CR,
14-05-00198-CR, 2006 WL 300409, at *2 (Tex. App.CHouston
[14th Dist.] Feb. 9, 2006, no pet.) (not designated for publication).





[18]Mendenhall, 446
U.S. at 555, 100 S. Ct. at 1877. 





[19]See
Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997)
(holding a reasonable, innocent person would feel free to leave when two plain
clothes officers approached and questioned suspect about travel plans and
whether he was carrying drugs, told suspect they were conducting a Anarcotics
interview,@ and
requested to search suspect=s bag);  State v. Salinas, No. 12-02-00275-CR,
2004 WL 306128, at *3 (Tex. App.CTyler Feb. 18, 2004, no pet.)
(mem. op., not designated for publication) (noting that an officer=s
questions about suspects=
involvement in destruction of property would not communicate to the individuals
that they were not free to leave); Pando, No. 02-98-00484-CR, slip op.
at 5 (holding police officers= conversation with suspect,
informing him they were going to execute a search warrant at his house and
inquiring whether he wanted to be present, was consensual encounter).





[20]See
Saldivar, 209 S.W.3d at 284.





[21]Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).





[22]Id. at
492B93. 





[23]Id.  The visiting judge also apparently believed
that Officer Mitchell had reasonable suspicion to believe that appellee was
intoxicated when he stated on the record that the State Amight
have a public intox.@  





[24]Even
assuming that the trial court was correct in concluding that public
intoxication was the only offense for which appellee could be arrested under
the evidence admitted at the suppression hearing, the lawfulness of the arrest
is not defeated by the officer=s calling the offense a
DWI.  See Jones v. State,
949 S.W.2d 509, 515B16
(Tex. App.CFort
Worth 1997, no pet.).





[25]In
light of our disposition of the State=s first two points, we need
not address the State=s
remaining points.  See Tex. R. App. P. 47.1.