

# NUMBER 13-07-337-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JOHN CASTANEDA, JR,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

### On appeal from the County Court
### of Matagorda County, Texas

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez and Vela
### Memorandum Opinion by Justice Vela

A jury convicted John Castaneda Jr. of driving while intoxicated and assessed punishment at 180 days in jail, probated for fifteen months, and an $800 fine. By a single issue, Castaneda argues the trial court erred in denying his motion to suppress evidence seized during his traffic stop because there was no probable cause and no reasonable suspicion to stop him. We affirm.

## A. Background Facts

In the early morning of July 15, 2006, James Orr, a Matagorda County sheriff's deputy, was patrolling Bay City when he saw a vehicle stop at an intersection and then accelerate "real fast," "faster than normal." This behavior caught Deputy Orr's attention, prompting him to follow the vehicle. While pacing the vehicle, he determined that it was exceeding the posted thirty-mile-per-hour speed limit. About six blocks ahead, Deputy Orr saw flashing emergency lights on other officers' vehicles, which had pulled over to make a separate traffic stop. Deputy Orr testified that the proper action to take when approaching an emergency vehicle with flashing lights is to vacate the lane of the emergency vehicle or slow to twenty miles under the posted speed limit.

As the vehicle Deputy Orr was following headed toward the traffic stop, it appeared as if the driver attempted to change lanes by veering to the left. Instead of changing lanes, however, the vehicle came back into the extreme right-hand side of the lane, passing the emergency traffic stop without either vacating the lane or slowing its speed. Deputy Orr activated his overhead lights and followed the vehicle until it stopped. At the time of the stop, Deputy Orr smelled a strong odor of alcohol on Castaneda, the driver. When he asked Castaneda for his driver's license, he noticed Castaneda also had bloodshot, glassy eyes, and slurred speech.

Troopers Strawn and Kopacz, whose emergency vehicle lights Castaneda had driven by, pulled up to assist Deputy Orr. Trooper Strawn asked Castaneda to exit the vehicle, at which point Trooper Strawn noticed an open can of beer inside. Trooper Strawn also smelled a strong odor of alcohol on Castaneda's breath and asked him how much beer he had had to drink. Castaneda replied "five or six."

2

Trooper Strawn testified that Castaneda performed poorly on the field-sobriety tests. Castaneda's eyes jerked during the horizontal-gaze-and-nystagmus test, which is one indication of the loss of the normal use of physical faculties. In addition, Castaneda lost his balance during the walk-and-turn and the one-legged-raise tests. Trooper Strawn arrested him for DWI.

## B. Discussion

By his sole issue, Castaneda argues the trial court erred in denying his motion to suppress evidence seized during the stop because Deputy Orr had neither probable cause nor reasonable suspicion to stop him.

### Standard of Review

In *St. George v. State*, 237 S.W.3d 720 (Tex. Crim. App. 2007), the court stated:

> Whether a specific search or seizure was reasonable is a mixed question of law and fact and is conducted *de novo*. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. We do not engage in our own factual review; rather, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. Trial courts are given almost complete deference in determining historical facts. We review the record to determine whether the trial court's ruling is supported by the record and correct under some theory of law applicable to the case.

*Id.* at 725 (citations omitted). "We conduct a *de novo* review of evidence when the resolution of mixed questions of law and fact do not turn on an evaluation of credibility and demeanor." *Id.* When, as in this case, there are no explicit fact findings, and neither party timely requested findings and conclusions, we imply the necessary fact findings that would support the court's ruling if the evidence, viewed in the light most favorable to the court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006). We then review the court's legal ruling *de novo*, unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Id.*

3

*Reasonableness of the Detention*

The Fourth Amendment to the United States Constitution and Article 1, Section 9 of the Texas Constitution guarantee the right of the people to be secure against unreasonable searches of their persons, houses, papers, and effects. *See* U.S. CONST. amend. IV; TEX. CONST. art.1,§ 9. In deciding whether Castaneda's detention was reasonable, we view the trial court's factual findings in the light most favorable to his ruling, but we decide the issue of reasonableness as a question of Fourth Amendment law under United States Supreme Court precedent. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). In *Kothe*, the court of criminal appeals noted that the supreme court has stated that "Fourth Amendment 'reasonableness' is measured 'in objective terms by examining the totality of the circumstances;' it 'eschew[s] bright-line rules, instead emphasizing the fact-specific nature of the . . . inquiry.'" *Id*. (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

Routine traffic stops are analogous to investigative detentions and are governed by *Terry v. Ohio*, 392 U.S. 1 (1968); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.–Fort Worth 2007, pet. dism'd); and *Gansky v. State*, 180 S.W.3d 240, 242-43 (Tex. App.–Fort Worth 2005, pet. ref'd). A *Terry* analysis has two prongs. First, a court must decide if an officer's action was justified at its inception. *Martinez*, 236 S.W.3d at 369. Second, the court must determine whether the search and seizure was reasonably related in scope to the circumstances that justified the interference in the first place. *St. George*, 237 S.W.3d at 726; *Kothe*, 152 S.W.3d at 63.

4

*Whether Deputy Orr's Action was Justified at its Inception*

Deputy Orr's stop was valid for two reasons. First, he saw Castaneda commit a traffic violation by driving at a speed above the posted limit. Speeding is a traffic violation for which an officer may lawfully stop and detain a person. *See* TEX. TRANSP. CODE ANN. § 545.351 (Vernon 1999); *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (stating that the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred). Second, Deputy Orr saw that Castaneda failed to either change lanes or reduce his speed when he approached the emergency vehicle. When an authorized emergency vehicle is stationary and using visual signals that meet statutory requirements, an operator of an approaching vehicle must comply with section 545.157(a) of the transportation code. *See* TEX. TRANSP. CODE ANN. § 545.157 (Vernon Supp. 2007).[1] Therefore, Deputy Orr had reasonable suspicion to conclude that Castaneda violated the law. *See id*. This allowed him to stop Castaneda. *See State v. Gray,* 158 S.W.3d 465, 469-70 (Tex. Crim. App. 2005) (providing that officer has probable cause to stop and arrest a driver if officer sees the driver commit a traffic offense).

---

[1]Section 545.157(a) of the transportation code provides as follows:

(a) On approaching a stationary authorized emergency vehicle using visual signals that meet the requirements of Sections 547.305 and 547.702, an operator, unless otherwise directed by a police officer, shall:

(1) vacate the lane closest to the emergency vehicle when driving on a highway with two or more lanes traveling in the direction of the emergency vehicle; or

(2) slow to a speed not to exceed:

(A) 20 miles per hour less than the posted speed limit when the posted speed limit is 25 miles per hour or more; or

(B) five miles per hour when the posted speed limit is less than 25 miles per hour.

TEX. TRANSP. CODE ANN. § 545.157 (a) (Vernon Supp. 2007); *see id.* § 547.305 (Vernon Supp.2007), § 547.702 (Vernon 1999). The statute defines an "authorized emergency vehicle" as, among other things, "a fire department or police vehicle[.]" *Id.* § 541.201(1)(A) (Vernon Supp. 2007).

Deputy Orr's subsequent detention of Castaneda pursuant to either traffic violation is considered to be valid as well. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) ("As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation,* regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention.") (Emphasis in original). Once an officer concludes the investigation of the conduct that initiated the stop, a continued detention is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Saldivar v. State*, 209 S.W.3d 275, 282 (Tex. App.–Fort Worth 2006, no pet.); *see Davis v. State,* 947 S.W.2d 240, 243, 245 (Tex. Crim. App. 1997); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.–Fort Worth 2001, pet. ref'd).

After making a stop for a traffic violation, an officer may rely on all of the facts ascertained during the course of his or her contact with a defendant to develop articulable facts that would justify a continued detention. *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd); *Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.–Texarkana 1999, pet. ref'd).

*Conclusion*

Upon contacting Castaneda, Deputy Orr smelled a strong odor of alcohol. When he asked Castaneda for his driver's license, he noticed Castaneda had bloodshot, glassy eyes, and slurred speech. Thus, Deputy Orr had reasonable suspicion to believe Castaneda had either committed or was committing another offense, namely DWI. This permitted him to continue the detention in order to administer the field-sobriety tests. *See Saldivar,* 209 S.W.3d at 282; *Davis,* 947 S.W.2d at 245; *McQuarters,* 58 S.W.3d at 256.

6

We hold that the evidence shows that both probable cause and reasonable suspicion existed to support Deputy Orr's stop of Castaneda. We overrule the issue and affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 10th day of April, 2008.