**Opinion filed April 18, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00122-CR
_____

**DANNY EUGENE IVIE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24059A**

## O P I N I O N

Danny Eugene Ivie appeals his conviction for possession of more than one gram but less than four grams of heroin, which was enhanced by two prior felony convictions for murder and sexual assault of a child. The trial court assessed punishment at confinement for twenty-five years and sentenced him accordingly. We affirm.

### I. Background Facts

Appellant was arrested during a traffic stop. Earlier that day, Narcotics Agent Gary Kalmus received an anonymous tip that Danny Sutton used and possessed heroin. The caller described Sutton's vehicle and gave Agent Kalmus the address of the auto shop where Sutton

worked as a mechanic. Agent Kalmus conducted surveillance at the auto shop and saw Appellant leave in the vehicle. After he observed several traffic violations, Agent Kalmus asked an officer in a marked car to conduct a traffic stop, and he also requested a canine unit. As Deputy Frank Johnson approached the gas station where Agent Kalmus had directed him, Appellant pulled out of the parking lot in front of Deputy Johnson.

Deputy Johnson conducted a traffic stop after he observed two traffic violations. Appellant said his name was Danny Sutton, but he had no identification. While Deputy Johnson attempted to confirm his identity, a trained narcotics dog arrived and quickly alerted to drugs in the vehicle. The officers searched Appellant and found nothing; the officers searched the vehicle and discovered a used syringe containing blood and cocaine, heroin, and various prescription drugs. Deputy Johnson testified he believed that, based on Appellant's actions and mannerisms, Appellant knew the drugs were in the vehicle.

Deputy Johnson planned to take Appellant to jail to fingerprint and identify him when Appellant finally admitted his real identity. Once at the jail, Appellant told the jailers he was concerned about drug withdrawals because he regularly used heroin and had that day.

During a pretrial hearing on a motion to suppress, Appellant learned that police had been following him because of the anonymous tip. Although the trial court had concluded the initial stop was valid because Deputy Johnson observed Appellant's traffic violations, Appellant sought to prove that the anonymous tipster had set him up by first planting the drugs in his vehicle.

Appellant's girlfriend, Lisa Raye Carmichael, testified that her late husband's sister, Marva Bullock, lived across the street from her and had asked to move in with her. Carmichael told Bullock that she could not live there while Appellant was living with her. Carmichael told the jury that Appellant was a regular heroin user, that she used heroin too, but that Appellant never had drugs or a syringe in his vehicle. Carmichael testified that Bullock knew Appellant's alias, work address, drug use, and ability to locate drugs; Bullock also had access to his vehicle. Appellant had been convicted previously and elected not to testify to prevent the jury from hearing about his prior convictions for murder and sexual abuse of a child. The jury convicted Appellant of possessing between one and four grams of heroin.

## II. Issues on Appeal

Appellant raises three issues on appeal. First, he challenges the trial court's denial of his motion to suppress. Second, Appellant contends that the trial court abused its discretion when it

2

denied his requests for an appointed investigator and two appointed experts. Third, Appellant complains about the trial court's exclusion of relevant testimony necessary to his defense.

### III. Analysis

#### A. Motion to Suppress

In his first issue, Appellant asserts that the trial court abused its discretion when it denied his motion to suppress because the evidence was obtained after an unlawful traffic stop. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We defer to the trial court's findings of historical facts and review de novo the trial court's application of the law. *Weide v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

A traffic stop is a seizure and must be reasonable under both the United States and Texas Constitutions. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). "There need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). An actual traffic violation constitutes probable cause that sufficiently justifies the initial detention. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993).

The duration of the detention is reasonable when, under the totality of the circumstances, it lasts no longer than is necessary to effectuate the purpose for the stop. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Florida v. Royer*, 460 U.S. 491, 500 (1983). During a traffic stop, an officer has the right to ask for a valid driver's license, information concerning ownership of the vehicle, proof of insurance, and information concerning the driver's destination and purpose. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004); *Davis*, 947 S.W.2d at 245 n.6; *Caraway v. State*, 255 S.W.3d 302, 307 (Tex. App.—Eastland 2008, no pet.); *Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd). The officer may also check for outstanding warrants. *Kothe*, 152 S.W.3d at 63; *Caraway*, 255 S.W.3d at 308. The reasonableness of the duration of the stop depends on whether it was necessary to detain the defendant and whether the officers diligently pursued a means of investigation likely to quickly confirm or dispel any suspicion. *Love v. State*, 252 S.W.3d 684, 687 (Tex. App.—Texarkana 2008, pet. ref'd); *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.). To validly

prolong a detention beyond the reason for the stop, officers must have reasonable suspicion to believe the person is violating the law, but no additional justification is necessary for a canine sniff that occurs during a lawful traffic stop. *1979 Pontiac Automobile v. State*, 988 S.W.2d 241, 244 (Tex. App.—Eastland 1998, no pet.); *see also United States v. Place*, 462 U.S. 696, 707 (1983); *Crockett v. State*, 803 S.W.2d 308, 310 n.5, 311 (Tex. Crim. App. 1991).

Appellant complains that the evidence should have been suppressed because it was "the fruits of a pursuit and detention for which officers had no sufficient basis in the first place." Appellant contends the stop was illegal because it was based on "a single anonymous phone [call] without any confirming surveillance or actual independent investigation." Appellant sought to suppress both the physical evidence discovered in the search of the vehicle and his subsequent statement to police during booking about drug use; however, his complaint on appeal is limited to the legality of the initial stop. The State argues that officers had probable cause for the stop after observing Appellant commit two traffic violations. Although Appellant only complains about the initial stop, the State contends that any prolonged detention was justified to investigate Appellant's identity and that the canine sniff occurred before police had determined Appellant's identity.

Deputy Johnson testified at the pretrial hearing on Appellant's motion to suppress. He said he initiated the traffic stop after he observed Appellant commit two traffic violations. Deputy Johnson initially observed Appellant leave Allsup's parking lot without stopping before entering the roadway and then saw Appellant change lanes without using his turn signal.[1] Deputy Johnson told the trial court that, when he approached the vehicle, Appellant claimed to be Danny Sutton, but that Appellant produced no identification. While Deputy Johnson worked with the dispatcher to verify Appellant's identity, confirm his eligibility to drive, and determine if he had outstanding warrants, another officer arrived with a canine trained to recognize the odor of cocaine, methamphetamine, marihuana, and heroin.

The dog quickly alerted on the vehicle, which gave them probable cause to search it. Officers found nothing after searching Appellant, but they found a used syringe, capsules of heroin, a capsule of cocaine, and various prescription drugs in the vehicle. It was not until after Appellant was handcuffed and placed in the back of the police car and after Deputy Johnson

---

[1]*See* TEX. TRANSP. CODE ANN. § 545.256 (West 2011) (requiring operators emerging from a driveway to stop the vehicle before crossing a sidewalk); *Id.* § 545.104 (requiring operators to use the turn signal to indicate the intent to change lanes).

sorted through the names, birth dates, and social security numbers for "quite an extended time" that Appellant finally gave his true name. After receiving his *Miranda*[2] warnings, Appellant told Deputy Johnson he had lied about his identity because of an outstanding warrant.

We conclude that Deputy Johnson had probable cause to justify the initial stop based on his observation of multiple traffic violations. Once Appellant falsely identified himself, Deputy Johnson had reasonable suspicion to investigate Appellant's identity. Before the investigation was complete, the canine alerted on the vehicle, which gave the officers probable cause to search for drugs. Because Deputy Johnson had probable cause for the initial stop, because the duration was reasonable, and because the canine sniff occurred during a lawful stop, the trial court did not abuse its discretion when it denied Appellant's motion to suppress based on the legality of the stop. Appellant's first issue is overruled.

*B. Appointed Experts*

In his second issue, Appellant contends that the trial court committed reversible error when it denied his requests to appoint an investigator, an expert in psychiatry, and an expert in chemical analysis. We review the trial court's ruling for an abuse of discretion. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). To be entitled to the appointment of an expert, an indigent defendant must make a threshold showing that an issue in his defense or in the State's case will be a significant factor. *Ake v. Oklahoma*, 470 U.S. 68, 82–83, 86 (1985); *Griffith*, 983 S.W.2d at 286–87. "The key question appears to be whether there is a high risk of an inaccurate verdict absent the appointment of the requested expert." *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999).

Satisfying the preliminary condition requires more "than undeveloped assertions that the requested assistance would be beneficial." *Williams v. State*, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997). "In cases holding that a sufficient showing was not made under *Ake*, the defendant typically has failed to support his motion with affidavits or other evidence in support of his defensive theory, an explanation as to what his defensive theory was and why expert assistance would be helpful in establishing that theory, or a showing that there was a reason to question the State's expert and proof." *Rey v. State*, 897 S.W.2d 333, 341 (Tex. Crim. App. 1995). "In cases holding that the defendant was entitled to the appointment of an expert, the defendant has

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

5

generally made his defensive theory clear to the trial court and supported it with factual allegations and/or evidence that expert testimony would support his theory." *Id.*

### 1. Appointment of a Psychologist or Psychiatrist

In his pretrial motion, Appellant requested the appointment of an expert in the field of psychology or psychiatry. He contended that Appellant's history of mental illness and erratic behaviors is a challenge to communication and "may have contributed to the alleged offenses and/or to mitigation considerations for punishment." Although the trial court denied the request, Appellant re-urged the motion during a hearing on another matter. Counsel argued that Appellant "has an extensive history of mental health problems. We're not talking about competency or insanity but we are talking about things which are mitigating and may have some relevance to the punishment certainly." Counsel contended that "it goes to possession of heroin and it goes to his awareness of the circumstances around him, the knowledge, elements, mens re[a] involved." The trial court again denied the request.

We hold that the trial court did not abuse its discretion when it denied Appellant's request to appoint a psychiatric expert. Although verified by Appellant's trial counsel, his motion was not supported by affidavits that supported his request. Instead, Appellant contended:

> Without psychological expert assistance, counsel cannot know whether a person with the Defendant's mental health problems would be legally insane under the circumstances of this case. Furthermore, only an expert can convey the mitigating quality of the Defendant's mental illness or explain what the Defendant was likely experiencing at the time of the offense.

The motion provided no basis for the contentions concerning Appellant's mental health and, instead, contained only vague and conclusory assertions such as "only an expert can convey the mitigating quality of the Defendant's mental illness." A defendant must offer more "than undeveloped assertions that the requested assistance would be beneficial." *See Williams*, 958 S.W.2d at 192. Appellant did not make the preliminary showing of his need for a psychiatric expert.

### 2. Appointment of an Investigator

Appellant's next complaint concerns the appointment of an investigator. A defendant must show that an issue underlying a defensive theory or an issue in the State's case will be a "significant factor at trial." *Rey*, 897 S.W.2d at 342. We review the record for factual

6

allegations or evidence supporting Appellant's explanation of his defensive theory and how an expert would assist him in preparing for trial and proving his case. *See id.*

The trial court held the hearing on Appellant's motion to suppress on the Friday before trial began the following Monday. Agent Kalmus testified he had "received information that a male subject named Danny Sutton that worked at a mechanic shop at North 6th and Willis Street and drove a small gray pickup was using and selling heroin." Agent Kalmus went to that location, spotted a similar vehicle, and followed the vehicle. After observing several traffic violations, Agent Kalmus requested a canine unit and asked Deputy Johnson to conduct a traffic stop.

Deputy Johnson conducted a traffic stop after observing two traffic violations. During cross-examination, Agent Kalmus told the court that the information he received was an anonymous tip and that he had not attempted to identify the caller. When Appellant asked about the tipster's identity and what actions the officers took to verify the information, the trial court sustained the State's relevance objection. Appellant explained the purpose of the testimony:

> [DEFENSE COUNSEL]: Well, Your Honor, it goes to the issue of whether they had any basis --
>
> THE COURT: No, it doesn't because of the traffic stop. I mean, that's the whole crux of it is the traffic stop. As long as the traffic stop is valid then they have the right to ask him who he is and he gives them a name that they can't verify so he continued to give them the name and they never could verify it until very late in the investigation.
>
> [DEFENSE COUNSEL]: The other problem is that the --
>
> THE COURT: Well, I am not going to argue with you. You can argue with me on Monday morning.
>
> [DEFENSE COUNSEL]: I'm just trying to explain what I am trying to ask --
>
> THE COURT: I know, but I don't agree with you. So go ahead.
>
> [DEFENSE COUNSEL]: Pass the witness.

On the morning of trial, the trial court held a second hearing to consider the remaining pretrial matters, including a motion for continuance that Appellant filed that day. Appellant based his motion on the unavailability of witnesses. After the court ruled on the pending

motions, defense counsel questioned Appellant on the record about his understanding of the trial and whether to proceed. During the questioning, counsel paused and addressed the trial court:

> Your Honor, I have not had a chance to file a motion on this, but based upon the testimony that came out at the motion to suppress hearing on Friday regarding the anonymous caller and the anonymous source of the tip that resulted in [Appellant's] traffic stop we would request an investigator be appointed to try to determine -- track down who this anonymous tipster was and how that came about. And we didn't find out about that until Friday and had not had a chance to look into that.

The trial court denied Appellant's oral motion to appoint an investigator.

The only explanation of the need for an investigator proffered at the suppression hearing went to the basis for the stop; as the trial court properly noted, regardless of whether there was a tip, the officer's observance of two traffic violations justified the initial stop. *See Tasby v. State*, 111 S.W.3d 178, 184 (Tex. App.—Eastland 2003, no pet.) ("It is well settled that a detention is justified when a person commits a traffic violation in an officer's presence."). In his oral request on the day of trial, Appellant asked for an investigator to determine the tipster's identity and "how that came about."

We hold that the trial court did not abuse its discretion when it denied the motion to appoint an investigator. Like other cases where a defendant fails to meet the threshold requirement, Appellant failed to explain his theory how he would use an investigator or offer evidence in support of his contention. On appeal, Appellant argues his "need for an investigator went directly to Appellant's primary defensive theory, which was that Marva Bullock may have herself been the anonymous tipster, actually placing the drugs in Appellant's vehicle without his knowledge and then pointing law enforcement at him knowing he had an outstanding warrant and would be arrested and no longer an obstacle to her moving in to [Appellant's] residence."

Although his argument on appeal states his trial theory, Appellant failed to explain this theory to the trial court. Appellant did not explain how an investigator would assist him. To succeed on his defensive theory, Appellant would have had to prove both that Bullock was the anonymous tipster and that she planted the drugs in Appellant's vehicle. Without an explanation that Appellant believed the tipster had also planted the drugs, the trial court could not know how Appellant intended to use the information beyond establishing the illegality of the initial stop. Finally, Appellant's oral motion was not supported by evidence or affidavits. A review of the entire record reveals evidence indicating Bullock had motive and opportunity to frame

8

Appellant, but even if this were sufficient, this evidence was not before the trial court at the time of his pretrial ruling. *See Johnson v. State*, 746 S.W.2d 791, 794 (Tex. App.—Corpus Christi 1987, pet. ref'd) (considering the trial court's denial of a request for an investigator by reviewing the evidence before the trial court when it made its decision). Appellant failed to make a preliminary showing of his need for an investigator.

### 3. Appointment of a Forensic Chemist

Appellant next argues that the trial court erred when it denied his request for an appointment of a forensic chemist to conduct an independent analysis of the seized substances. Appellant argues that independent examination was necessary because "the State was only able to account for the weight of one of the seventeen capsules seized as .03 grams and still could not show what the weight of the remaining capsules was." The State contends that Appellant failed to show that the result of the test would change based upon who did the test. Before we can determine whether the trial court abused its discretion in declining to appoint an expert to conduct an independent inspection, we must first determine whether Appellant was entitled to such an inspection.

"Texas has chosen to follow a rule which requires the trial court to permit discovery only if the evidence sought is material to the defense of the accused." *Quinones v. State*, 592 S.W.2d 933, 941 (Tex. Crim. App. 1980). Beyond the right to discover material evidence, it is well settled that a defendant in Texas has an absolute right to independent examination of the drugs in a drug possession case. *Id.*; *Terrell v. State*, 521 S.W.2d 618 (Tex. Crim. App. 1975); *Detmering v. State*, 481 S.W.2d 863 (Tex. Crim. App. 1972); *Nowling v. State*, 801 S.W.2d 182, 185 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). "Under article 39.14 of the Texas Code of Criminal Procedure, a defendant has a right to have any alleged contraband tested by his own chemist if he makes a *timely* request for such an opportunity." *Scott v. State*, 825 S.W.2d 521, 523 (Tex. App.—Dallas 1992, pet. ref'd). A trial court commits reversible error if it denies a timely motion to allow inspection of the drugs in a drug possession case. *Terrell*, 521 S.W.2d at 619; *Detmering*, 481 S.W.2d at 864.

Although Appellant never filed a discovery request, the State informed Appellant that "[p]hysical evidence is in the care and custody of the Taylor County Sheriff's Department . . . and available for inspection by defense counsel upon contacting the undersigned as to a time and date of desired inspection." A list of property in evidence included two unlabeled plastic pill

9

bottles, a syringe containing blood, capsules containing heroin, a capsule containing cocaine, and various prescription medications in tablet form. The list reflects a description of seventeen "capsules, clear and pink in color, each containing heroin" with a "total weight approximately 1.7 grams."

The trial court held a pretrial hearing on Appellant's motion to suppress; Appellant moved for continuance on the day of trial based on unavailable witnesses; and the trial court again heard motions, including the last-minute motion for continuance. Appellant never requested the appointment of a forensic chemist prior to trial. Because the trial court set a pretrial hearing on Appellant's motion to suppress, the timeliness of his request for independent inspection is governed by Article 28.01 of the Texas Code of Criminal Procedure, which provides in part:

> Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits . . . . The pre-trial hearing shall be to determine any of the following matters:
>
> . . . .
>
> (5) Motions for continuance . . . ;
>
> (6) Motions to suppress evidence . . . ;
>
> . . . .
>
> (8) Discovery;
>
> . . . .
>
> Sec. 2. When a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, *except by permission of the court* for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters.

TEX. CODE CRIM. PROC. ANN. art. 28.01 (West 2006) (emphasis added). This section "was designed to enable the trial judge to dispose of such matters sometime prior to trial to avoid delays after jurors and witnesses have been summoned." *Bosley v. State*, 414 S.W.2d 468, 470 (Tex. Crim. App. 1967). Although a trial court presented with a timely request for independent examination of drugs in a possession case has no discretion to deny the request, it has the

10

discretion to forbid the party from raising the issue altogether when the request is untimely. *See Scott*, 825 S.W.2d at 525 ("We conclude that the trial court did not reach the merits of the [discovery] motion because of the belief that it was untimely and that this decision was not an abuse of its discretion."). Therefore, the issue is whether the trial court reached the merits of the request. *See id.*

On day two of trial, the State offered the testimony of William L. (Larry) Todsen, a forensic scientist who had worked for the Department of Public Safety crime laboratory for over thirteen years. Todsen told the jury that, in his first step, he weighed the substance in its packaging and then subtracted the weight of the packaging alone to find the net weight of the substance. Todsen weighed the seventeen capsules inside the two baggies they arrived in, and he then subtracted the weight of the baggies. The net weight was 1.69 grams. On cross-examination, Todsen admitted he never weighed the capsules alone and never weighed only the heroin contained inside the capsules. Todsen agreed that the capsules were not made from heroin. Todsen also explained, however, that he had never weighed the capsule in the thirteen years he had been testing substances and that DPS protocol did not require it.

During the charge conference, Appellant requested the lesser included offense of possession of less than one gram based on Todsen's testimony. But, before the court read its charge to the jury, the State requested to reopen evidence and the following occurred:

> [PROSECUTOR]: I would like to reopen under 36.02 to offer a rebuttal evidence. It came to my attention during the charging conference that the defense wanted a lesser included offense of less than a gram. It was my belief at one time that the defensive theory was that the drugs had been planted on [Appellant] and none of them were his. It seems to be that there's a contest now as to the actual weight of the heroin outside of the capsule, which has not been testified to, and I've had Mr. Todsen take the capsule apart, weigh it, and see if that would reduce the amount of the heroin less than a gram.

> THE COURT: You want him to testify to his results?

> [PROSECUTOR]: Yes.

> [DEFENSE COUNSEL]: Your Honor, we would object to the State being allowed to reopen and bring in this testimony. It would prejudice the defense and to the Defendant without having previous notice of these matters. We would also have to have in that instance --

THE COURT: Now, I did call you and tell you that they had asked about this.

[DEFENSE COUNSEL]: Yes, Your Honor. Just for the record.

THE COURT: But you did have as much notice as anybody else had.

[DEFENSE COUNSEL]: Yes, sir, but that's --

THE COURT: Of course, you know nobody knew this was going to happen because I didn't know what Mr. Todsen was going to say and you requested the lesser included offense.

[DEFENSE COUNSEL]: And the State should have known about all of this ahead of time.

THE COURT: Well, I see very little harm in just taking another five minutes to have this man testify.

[DEFENSE COUNSEL]: We would request that we have an opportunity for our own independent analysis of the substance.

THE COURT: Well, that request is -- do you -- you mean as to what it is?

[DEFENSE COUNSEL]: As to what it is and the quantity.

THE COURT: No, I won't appoint you an investigator at the end of the trial. You've had ample opportunity to do that.

[DEFENSE COUNSEL]: We've prepared based on what the State's evidence was presented to us having been up to this point and the lab results and the manner in which the testing was done.

THE COURT: How did you know the manner in which the testing was done until you heard him testify?

[DEFENSE COUNSEL]: Because that's the way it was described as having been done.

THE COURT: By whom?

[DEFENSE COUNSEL]: By their protocols.

THE COURT: Hold it. You said -- what are you talking about?

[DEFENSE COUNSEL]: That's the state's lab protocols, testing it.

12

THE COURT: You said you didn't know about it. You did know about it?

[DEFENSE COUNSEL]: We knew about the protocol and we knew that this was the way that the State had decided to test it. But this was --

THE COURT: But you didn't know in this case?

[DEFENSE COUNSEL]: Not in this case.

THE COURT: -- until he testified about two hours ago?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: Well I am going to let them put it on. And we will do that as soon as we get 12 people here. . . . I will grant the motion, the State's motion to reopen.

The trial court was concerned with the fact this discovery request was urged "at the end of the trial" and could have declined to hear the request altogether. *See Scott*, 825 S.W.2d at 524–25 (denying a request for independent chemical analysis of substance filed on the day of trial because it was "too late"). Although Appellant tried to show "good cause" for the delay by arguing he based his trial preparation on "the lab results and the manner in which the testing was done," Appellant admitted that he was aware of protocol. Todsen had already testified that protocol did not require him to separately weigh the capsule and the substance. Further, in the State's discovery response, it listed seventeen capsules of heroin weighing 1.7 grams. Nothing in the record indicates that Appellant did not receive sufficient notice of the pretrial hearings to file a timely motion. We conclude that the trial court did not reach the merits of the request for independent examination because the motion was untimely. The trial court's decision was not an abuse of its discretion. Appellant's second issue is overruled.

*C. Admissibility of Testimony*

In his third issue, Appellant complains that the trial court erred when it excluded testimony relevant to his defense. Appellant complains that, in two instances, the trial court erroneously excluded testimony of "details to confirm, or at least corroborate Appellant's own suspicion, of the identity of the supposedly anonymous caller as Marva Bullock." We review a trial court's decision to exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

13

First, Appellant contends that the trial court's exclusion of evidence related to the identity of the tipster prevented him from presenting his defense. The complained-of testimony occurred during Appellant's cross-examination of Agent Kalmus:

> [DEFENSE COUNSEL] Q. Just to be clear. I mean, the voice that you heard on the phone giving you that anonymous tip to you personally, was this truly anonymous or did you recognize it or have any kind of ID or who it might be?
>
> A. I had ideas but I did not know.
>
> Q. Who would have been your suspicion as to who that might have been?
>
> [PROSECUTOR]: Objection, calls for speculation.
>
> [DEFENSE COUNSEL]: He already said he had ideas.
>
> THE COURT: Sustained.

As a threshold requirement, witnesses may only testify to matters that are within the witness's personal knowledge. TEX. R. EVID. 602. Testimony based on speculation or conjecture makes no fact more or less probable, and it would not be relevant. *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd) (citing TEX. R. EVID. 401). Agent Kalmus stated he did not know but "had ideas." Because Agent Kalmus would be guessing as to the identity of the caller, the speculative testimony was properly excluded. *See* TEX. R. EVID. 602. The trial court did not abuse its discretion when it excluded the testimony.

Appellant's second complaint of improper exclusion of evidence focuses on the testimony of Carmichael, a defense witness, as it related to Bullock's involvement both with illegal drugs and with narcotics agents. Appellant lived with Carmichael at the time of his arrest, and Carmichael testified she had told Bullock that she could not move into Carmichael's home if Appellant lived there. Based on those facts, Appellant's theory was that Bullock, who lived across the street, planted the drugs in Appellant's vehicle and then tipped off the narcotics agent. While Appellant was questioning Carmichael, a defense witness, the following occurred:

> [DEFENSE COUNSEL] Q. Are you aware of any kind of contact that Ms. Bullock may have had with law enforcement either before [Appellant] was arrested or since then?
>
> A. Yes, sir.

14

Q. What kind of contact would that be?

[PROSECUTOR]: Hearsay, Your Honor.

[DEFENSE COUNSEL]: Only to the extent you have personal knowledge.

THE COURT: I don't know what he means.

[DEFENSE COUNSEL]: I'm asking for personal knowledge.

THE COURT: Y'all go in the jury room for a second.

(Jury out)

THE COURT: Go ahead and answer the question.

A. [By the witness] Yes, I am aware of it, of some contact she's had with him. She's been in trouble herself before, which is irrelevant to this. And then with the contact that she had with me and my son. And then when she got busted with the prescription thing, she told them I gave you Danny Ivie, and since then she's been cut loose. She paid the bondsman. It's all over with.

[DEFENSE COUNSEL] Q. Is that something that she was -- the comment about I gave you Danny Ivie, is that something you actually heard yourself?

A. I heard her tell her friend that, yes.

Q. You mean the person she was talking to?

A. Yes.

THE COURT: Well, it's hearsay.

[DEFENSE COUNSEL]: As far as her -- I'm just trying to develop what she might be able to testify to. As far as --

THE COURT: You want her to testify that -- she's already -- she just repeated basically -- she talked about something before, but it was kind of vague. And then she mentioned something afterwards and that was the prescription drug deal, which she said she got -- did you use the word busted?

A. Yes, sir.

THE COURT: In her other part of her testimony she said that she never got arrested and nothing happened. So I don't know. So you asked her if she

15

ever got arrested on that and she said no. And now she's saying Ms. Bullock did get arrested for the prescription drug deal.

[DEFENSE COUNSEL]: I'm trying to clarify that and then --

THE COURT: So I don't know. Well, I don't see that Ms. Bullock's arrest on the prescription drug deal has anything to do with it. The fact that she overheard Ms. Bullock say something about [Appellant] is hearsay.

[DEFENSE COUNSEL]: Well, the other thing I was going to ask her, Your Honor, is any other arrests, law enforcement involvement of Ms. Bullock related to drugs.

[PROSECUTOR]: And I object to the relevance of that as well.

[DEFENSE COUNSEL]: Well, it goes to the issue of --

THE COURT: That Ms. Bullock was arrested for drugs?

[DEFENSE COUNSEL]: Yes, sir, as far as --

THE COURT: Sustain the objection. It's all kind of a theory. And I understand what you're saying. You want to believe that because Ms. Bullock got arrested sometime in the past -- and I'm not speaking for you --but somehow she knew the police officers. Is that the point?

[DEFENSE COUNSEL]: If she had been picked up on drug related charges --

THE COURT: That she knew --

[DEFENSE COUNSEL]: That she would have contact with law enforcement to report those kinds of things for other people.

THE COURT: Well, okay.

[DEFENSE COUNSEL]: It goes to motive and opportunity for her to be able to contact and be the source of information.

THE COURT: How does that make a difference if she was the source of the information? There's a difference between her being the source of the information and her, as the implication is, that she planted these drugs in his car.

[DEFENSE COUNSEL]: And the two are connected.

16

THE COURT: He said he didn't know who the source of the information was, the police officer.

[DEFENSE COUNSEL]: Right. He doesn't know. But the point is, it could have been Ms. Bullock because she had previous contact with him and previous access.

THE COURT: Previous contact or access to who?

[DEFENSE COUNSEL]: The law enforcement that deal with drug agents.

THE COURT: Well, this is an anonymous tip line.

[DEFENSE COUNSEL]: It's anonymous from the officer's side. The person that called in knew who she is. The person who made the call in knew what they were calling for and about.

THE COURT: Well, okay, what specific questions do you want to ask her that I can deal with question by question basis?

[DEFENSE COUNSEL]: I want to ask her if Ms. Bullock had any past contact related to drugs with law enforcement prior to April 2009.

THE COURT: I will sustain the objection to that. It's not relevant. What's next? I sustained the objection to what she overheard Ms. Bullock say. What else?

[DEFENSE COUNSEL]: I think the other thing -- I think I probably already established everything else, Your Honor, so --

THE COURT: So you're not going to ask her those questions?

[DEFENSE COUNSEL]: I won't ask her those questions.

THE COURT: Bring the jury back in.

During the hearing outside the presence of the jury, the trial court excluded (1) Bullock's out-of-court statement that she had given Appellant up to police, (2) testimony of Bullock's drug-related arrests, and (3) testimony of Bullock's drug-related contact with law enforcement prior to April 2009. The trial court excluded the out-of-court statements as hearsay. Because Appellant offered Bullock's statement to prove the truth of the matter asserted—that Bullock "gave" Appellant to the narcotics agents—the trial court properly excluded it as hearsay. *See*

17

TEX. R. EVID. 801(d). The trial court excluded the testimony of Bullock's arrests and drug-related involvement with police based on relevance.

To prove its defensive theory, Appellant would have had to prove both that Bullock was the anonymous tipster and that she planted the drugs in Appellant's vehicle. Evidence is relevant only if it makes the existence of a fact more or less probable than it would be without the evidence. *See* TEX. R. EVID. 401. When making an admissibility determination, the trial court considers the probative value of the evidence and weighs it against the risks of undue prejudice, undue delay or waste of time, and confusing the jury. *Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. 1982); *see also* TEX. R. EVID. 403. While there was evidence indicating Bullock might have been the anonymous tipster, there was no evidence that Bullock planted the drugs. Without such evidence, the fact that Bullock may have been the anonymous tipster is not relevant to the jury's determination of whether Appellant possessed drugs.

Even if Bullock's prior drug-related arrests and involvement with police were relevant, the trial court could have reasonably concluded this relevance was substantially outweighed by the danger of confusing the jury or causing undue delay. *See* TEX. R. EVID. 403. We conclude that the trial court did not abuse its discretion by excluding the testimony related to Bullock. Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

April 18, 2013

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.